**William DECKER, Plaintiff,**

v.

**Gregory CAMPUS, individually and as Deputy of the Dutchess County Sheriff's Department, Defendant.**

**No. 95 CIV. 2207(WCC).**

United States District Court, S.D. New York.

Nov. 7, 1997.

David J. Clegg and Associates (David J. Clegg, of Counsel), Kingston, NY, for plaintiff.

McCabe & Mack LLP, (David L. Posner, of Counsel), Poughkeepsie, NY, for defendant.

1. It is undisputed that the workers declined plaintiff's assistance. *See* Dep. of William Decker ("Decker Dep."), at 36 ¶ 25; 37, ¶ 2 ("I was told they could handle it. They didn't need me.").

2. The parties disagree over the extent of plaintiff's contact with Wawrzonek. According to

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff William Decker ("Decker") brings this action pursuant to 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights under the United States Constitution against defendant Gregory Campus ("Deputy Campus"), individually, and as Deputy of the Dutchess County Sheriff's Department (the "Sheriff's Department"). Plaintiff's claims arise from his arrest on June 5, 1992 for second degree obstruction of governmental administration and disorderly conduct. Plaintiff asserts four claims, each in violation of his constitutional rights: (1) false arrest; (2) false imprisonment; (3) malicious prosecution and (4) excessive force. Defendant now moves for summary judgment on plaintiff's first three claims pursuant to FED.R.CIV.PRO. 56. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

On June 5, 1992, plaintiff and his wife were involved in a car accident in Dutchess County, as a result of which, plaintiff's wife was seriously injured and required the assistance of rescue and medical personnel. Defendant was one of many municipal officers who responded to the call. Sometime after 4 p.m., plaintiff was directed by various rescue personnel to step back from the vicinity of the accident, as they attempted to extricate Mrs. Decker from the driver side of plaintiff's Chrysler TC Mazarati convertible. More than once, plaintiff moved away from the car, but at other times, moved towards the car, in apparent disobedience of these directions. According to plaintiff, he remained by the car, in order to instruct the workers how to unhook, fold and remove its roof.[1] At some point, plaintiff approached Peter Wawrzonek, a firefighter, who was carrying a piece of heavy, hydraulic equipment, known as the "jaws of life," to the car.[2] Shortly thereafter,

plaintiff, plaintiff "touched [Wawrzonek] on the arm .... [for t]wo to three seconds .... to get his attention [while] he continued on towards the car." Decker Dep. at 51, ¶¶ 5, 12; 54,¶¶ 20–22. According to defendant, plaintiff "blocked the path and grabbed [Wawrzonek's] arm ... and held it for two or three seconds." Def.'s Mem. of

plaintiff was approached by Deputy Campus, due to "some communication between the rescue personnel and [Deputy Campus]." Decker Dep. at 53, ¶¶ 22–24. Deputy Campus ordered plaintiff to step back from the car, at least once, and led him away from the car. Dep. of Gregory Campus ("Campus Dep."), at 29, ¶¶ 3–8. Plaintiff refused, stating, "damn it, let go, I want to be with my wife." Decker Dep. at 59, ¶¶ 17–18. When plaintiff continued to resist Deputy Campus, Campus grabbed the back of plaintiff's "shirt or neck," kicked plaintiff's foot, and pushed plaintiff to the ground. Campus Dep. at 30, ¶¶ 11–20. Deputy Campus then handcuffed plaintiff, "picked him up by the arms, and placed him" in the back of a patrol car. *Id.* at 32, ¶¶ 19–20. Plaintiff was arrested for second degree obstruction of governmental administration and disorderly conduct, in violation of N.Y. Penal Law, sections 195.05 and 240.20. Plaintiff was then issued an appearance ticket by Deputy Campus, arraigned by a town justice and tried before a jury on both counts. On June 4, 1993, plaintiff was found not guilty of these crimes.

## DISCUSSION

### I. Summary Judgment Standard and the Qualified Immunity Defense

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, on a motion for summary judgment, all evidence must be viewed, and all inferences drawn, in the light most favorable to the nonmoving party. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Upon the movant's satisfaction of that burden, the onus shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), "[It] must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

The defense of qualified immunity acts to shield government agents from personal liability under section 1983 "insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or "insofar as it was objectively reasonable for them to believe that their [conduct] did not violate those rights." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991). In other words, the defense is available when "'a reasonable officer could have believed'" his conduct "'to be lawful, in light of clearly established law and the information [he] possessed.'" *Marshall v. Sullivan*, 105 F.3d 47, 53 (2d Cir.1996) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam)).

In *Robison v. Via*, the Court of Appeals for the Second Circuit held that a government defendant would be entitled to summary judgment on qualified immunity grounds when

Law at 2. *See also* Aff. of Peter Wawrzonek ¶¶ 5, 9 ("[Mr. Decker] stood in front of me and was blocking me from returning to the part of the area of the car where I needed to be.... I next

encountered Mr. Decker as I was walking around the car ... he again blocked my path and grabbed my arm ...").

856

"no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

821 F.2d 913, 921 (2d Cir.1987) (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986)). Thus, the defendant is not entitled to summary judgment if any reasonable trier of fact could find the defendant's judgment objectively unreasonable. *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995). For example, a police officer's judgment would be objectively unreasonable as a matter of law if no officer of reasonable competence could have made an arrest under similar circumstances. *Id.* at 420–21. It is undisputed that freedom from false arrest, false imprisonment and malicious prosecution are clearly established rights. *Accord Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir.1996). Summary judgment therefore turns on whether Deputy Campus's actions were objectively reasonable under the circumstances.

## II. *Action Against Deputy Campus in His Individual Capacity*

Section 1983 permits, among other things, a person to sue any other "person" acting under color of state law for violating his or her constitutional rights. 42 U.S.C. § 1983. A person may be sued in either his or her individual capacity, official capacity or both. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). In this case, plaintiff has sued Deputy Campus in both his individual and official capacities. *See* Cplt. at 1. By suing defendant in his individual capacity, plaintiff seeks to impose personal liability upon Deputy Campus, for arresting him without probable cause, in violation of his constitutional rights. *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105.

### A. *Probable Cause*

■ In general, there exists probable cause for an arrest if the officer has knowledge, or reasonably trustworthy information, of facts and circumstances that would warrant a person of reasonable caution to believe that the individual who is arrested has committed or is committing a crime. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979); *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). A finding of probable cause should be made upon the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). If there existed probable cause at the time of the arrest, the arrest is "privileged," and the individual has no constitutional or statutory claim against the officer who made the arrest. Similarly, if the officer reasonably believed that he had probable cause to make the arrest, or if officers of reasonable competence could disagree whether there had existed probable cause, the officer is immune from suit. *Wachtler v. County of Herkimer,* 35 F.3d 77, 80 (2d Cir.1994); *Golino,* 950 F.2d at 870. Upon either showing, the officer is entitled to qualified immunity, regardless of his underlying motive for the arrest. *See Mozzochi v. Borden,* 959 F.2d 1174, 1179–80 (2d Cir.1992); *Magnotti v. Kuntz,* 918 F.2d 364, 367–68 (2d Cir.1990). Thus, the plaintiff will not recover if there existed probable cause at the time of the arrest, or the officer's arrest was not unreasonable under the circumstances. *See Cook v. Sheldon,* 41 F.3d 73, 77 (2d Cir.1994). Probable cause therefore "is a complete defense to an action for false arrest." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994). If there are no material facts in dispute "as to the pertinent events and the knowledge of the officers," the question of probable cause may be determined as a matter of law. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). *See also Singer v. Fulton County Sheriff,* 63 F.3d 110, 118–19 (2d Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996) (affirming summary dismissal where complaint revealed probable cause).

### B. *False Arrest and Imprisonment*

■ The section 1983 claims for false arrest and imprisonment are substantially

similar to those claims under New York law. *See, e.g., Singer,* 63 F.3d at 118; *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992); *Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991). The common law torts of false arrest and imprisonment, however, are not available under section 1983 unless the arrest and subsequent detention violated the Constitution or a federal statute. *Cook,* 41 F.3d at 77. *See also Easton v. Sundram,* 947 F.2d 1011, 1016 (2d Cir.1991) (state law tort does not always rise to level of constitutional violation). It is well settled that an arrest and subsequent detention without probable cause constitutes a violation of a person's Fourth and Fourteenth Amendment rights to be free from "unreasonable search and seizure." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). The torts of false arrest and imprisonment therefore support claims against the police under section 1983. *See, e.g., Lennon,* 66 F.3d at 423; *Posr,* 944 F.2d at 97.

▓▓▓ "Under New York law, a plaintiff claiming false arrest must show, *inter alia,* that the officer intentionally confined him without his consent and without justification." *Weyant,* 101 F.3d at 852 (citing *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 313–14 (1975)). An arrest made without a warrant is presumed to be unlawful, and the burden rests with the police officer to prove legal justification. *Id.* at 453, 373 N.Y.S.2d at 95, 335 N.E.2d at 315. It is undisputed that plaintiff was confined without his consent and that Deputy Campus knew that plaintiff did not wish to be confined. The issue before us, therefore, is whether there was probable cause. *See id.*

### 1. *Obstruction of Governmental Administration*

▓▓▓ "A person is guilty of obstructing governmental administration when he intentionally prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference." N.Y. PENAL LAW § 195.05. Section 195.05 makes unlawful the "physical ... interference" with an "official function." *See id.* Where the fact of physical interference with an official function is clear as a matter of law, an officer's decision to arrest an individual for obstructing governmental administration is generally reasonable. *See People v. Case,* 42 N.Y.2d 98, 100–01, 396 N.Y.S.2d 841, 842–43, 365 N.E.2d 872, 873–74 (1977); *Lennon,* 66 F.3d at 424. *Cf. Simpson v. Saroff,* 741 F.Supp. 1073, 1076–77 (S.D.N.Y.1990) (denying summary judgment on section 1983 claim where plaintiff denied having resisted arrest).

In *People v. Tarver,* 188 A.D.2d 938, 938, 591 N.Y.S.2d 907, 907 (3d Dep't 1992), the appellate division affirmed defendant's conviction for obstructing governmental administration where defendant had approached a police officer and "cock[ed] his arm as if to strike" him. The court reasoned that defendant's threat, coupled with his "approach," "necessitated another officer to divert his assistance ... and intervene from apparent attack." *Id.* at 188 A.D.2d 938, 591 N.Y.S.2d at 908.

Similarly, in *People v. Crayton,* 55 Misc.2d 213, 214, 216, 284 N.Y.S.2d 672, 674, 676 (N.Y.Sup.App.Term.1967), the appellate division affirmed defendants' conviction for obstructing governmental administration where defendants went "limp" upon arrest, thereby requiring officers to carry them to the patrol wagon. Prior to their arrest, defendants had "forced their way into the hallway" of the city hall, "sat down in the corridor," and "refused to leave when repeatedly requested by the police to do so." *Id.* at 214, 284 N.Y.S.2d at 673–74. The court held that the "obvious intent of [the statute] is [to allow] police to go about their business without any obstacles put in their way—'to allow the actions of the police to proceed calmly, efficiently and without difficulty.'" *Id.* at 216, 284 N.Y.S.2d at 675 (citation omitted). In upholding defendants' conviction, the court reasoned that by resisting arrest, defendants had obstructed governmental administration, because they had "delayed and frustrated" the officers' duty "to bring a violation of the law to a court of justice as promptly as possible." *Id.* at 216, 284 N.Y.S.2d at 676.

In *Linehan v. State,* 201 A.D.2d 706, 706, 608 N.Y.S.2d 294, 294 (2d Dep't 1994), the appellate division affirmed the dismissal of a

claim for false arrest and malicious prosecution where plaintiffs had "resisted the efforts of a court officer to keep [them] away from the area where a disturbance was taking place." *See also People v. Brewer,* 200 A.D.2d 579, 580–81, 606 N.Y.S.2d 292, 294–95 (2d Dep't 1994) (finding probable cause for disorderly conduct where defendant "resisted giving up" pouch, "pushed and cursed at the officer and assumed a combative stance").

More recently, in *Lennon,* 66 F.3d at 424–25, the Court of Appeals for the Second Circuit reversed a trial court's order denying summary judgment to defendant officers in a section 1983 case where the officers had arrested plaintiff for obstructing governmental administration, upon plaintiff's refusal to leave a car parked outside her place of employment. In that case, plaintiff had refused to leave the car, because she thought she was entitled to drive it. *Id.*

■■■ We hold that Deputy Campus had probable cause to arrest plaintiff for obstructing governmental administration. While plaintiff argues that he did not physically interfere with the duties of a public official, his own testimony establishes that he physically interfered with official functions. Plaintiff admittedly failed to comply with a deputy sheriff's instructions to "step back" from the scene of an accident, and physically broke away from the sheriff, who had been called to assist in a rescue attempt. Additionally, plaintiff admits that he approached a rescue worker, touched his arm, and asked him questions, while the worker was trying to save Mrs. Decker's life. In so doing, plaintiff obstructed the duties of two government officials and risked delaying the rescue of his wife.[3]

■■ Alternatively, we hold that even if there did not exist probable cause to arrest plaintiff for obstructing governmental administration, it was reasonable for Deputy Cam-

pus to believe that he had probable cause to make the arrest. Summary judgment must be granted on these grounds, because during an emergency, plaintiff admittedly refused to obey the orders of at least one rescue worker, and attempted to evade arrest by breaking free from Deputy Campus's grasp. *See, e.g.,* Decker Dep. at 59, ¶¶ 16–18. The undisputed facts render the actions of Deputy Campus reasonable in light of *Lennon,* in which the Court of Appeals for the Second Circuit granted defendants qualified immunity for arresting plaintiff where plaintiff had merely attempted to drive a car registered to her husband and then had refused to leave the car, in contravention to police orders. Clearly, any perceived interference with police orders at the scene of an accident— where life is at risk—is reasonable grounds for assuming probable cause to arrest.

### 2. *Disorderly Conduct*

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... [h]e ... creates a hazardous ... condition by any act which serves no legitimate purpose.

N.Y. PENAL CODE § 240.20.

In *People v. Munafo,* 50 N.Y.2d 326, 331, 428 N.Y.S.2d 924, 926, 406 N.E.2d 780, 783 (1980), the New York State Court of Appeals ruled that when confronted with an issue of disorderly conduct, courts must consider "the surrounding circumstances, including, of course, the time and place of the episode...." *Id.* Most recently, in *People v. Tichenor,* 89 N.Y.2d 769, 776–77, 658 N.Y.S.2d 233, 237–38, 680 N.E.2d 606, 610–11 (1997), the court upheld defendant's conviction for disorderly conduct, stating that the proper inquiry was not the consideration of specific contact between defendant and police, but rather the entire incident surround-

---

**3.** The parties dispute whether plaintiff intended to obstruct governmental administration. Intent is a necessary element of this crime. *See, e.g.,* N.Y. PENAL CODE § 195.05; *People v. Rich,* 57 A.D.2d 820, 820, 395 N.Y.S.2d 25, 26 (1st Dep't 1977); *People v. Stewart,* 37 A.D.2d 908, 909, 325 N.Y.S.2d 533–34 (4th Dep't 1971). We need not reach whether plaintiff had the requisite intent to have violated the statute, however, because we

hold that it was reasonable for Deputy Campus to believe that plaintiff had obstructed governmental administration. *Cf. United States v. Heatherton,* No. 86 Mag 2559, 1986 WL 11498, at *3 (S.D.N.Y. Sept.19, 1986) (dismissing charges against criminal defendant where defendant had acted "in an impulsive moment," and therefore lacked requisite intent).

ing the arrest. *Id.* at 776, 658 N.Y.S.2d at 237, 680 N.E.2d at 610.

In *People v. Kennedy,* 19 N.Y.2d 761, 761–62, 226 N.E.2d 186, 279 N.Y.S.2d 360, 361 (1967), the court of appeals affirmed defendant's conviction for "breaching the peace," where defendant had obstructed firefighters and police at the site of an accident. In that case, defendant "went past [a] police barrier and into an area of investigation occupied by firemen," in contravention of the orders of a police officer, who was at first "preoccupied with another incident." *Id.* Police were required "to remove [defendant] bodily from the scene" of the accident, upon her refusal "to return behind the barrier," as instructed. *Id.* In affirming her conviction for breaching the peace, the Court reasoned, "[i]t [was] enough that disorder was threatened by defendant's conduct." *Id.*

In *Goldstein v. Metro–North Commuter Railroad Co.,* 155 Misc.2d 1, 2, 597 N.Y.S.2d 258, 258 (N.Y.Sup.App. Term 1993), *aff'd,* 207 A.D.2d 723, 616 N.Y.S.2d 595 (1st Dep't 1994), an appellate court reversed an order denying summary judgment to defendant where defendant's employees had removed plaintiff from a train, after he had refused to leave, upon failing to pay a one-way fare. The court stated that the fact that "plaintiff may have felt aggrieved because monthly commutation tickets were unavailable" did "not render actionable the otherwise lawful conduct of the employees . . . and . . . [plaintiff's subsequent] arrest." *Id.*

■ Deputy Campus had probable cause to arrest plaintiff for disorderly conduct. First, it is clear that the conduct at issue here potentially involved the public. The accident occurred alongside a well-traveled road and had attracted many passersby. *See, e.g.,* N.Y. PENAL CODE § 240.00(1) (defining "public place" to include, but not be limited to, highways); Decker Dep. at 33, ¶¶ 17–18 ("There was a beehive of activity for a while."). The supporting depositions and

affidavits reveal that an emergency had occurred, necessitating a quick and immediate response by rescue personnel. Mrs. Decker had been pinned in her car. Plaintiff stood near the site of the crash, and at least once, refused to leave when directed to do so. Based on the totality of the circumstances, defendant had probable cause to arrest plaintiff for disorderly conduct. The fact that plaintiff was aggrieved by the situation does not negate probable cause. *See Goldstein,* 155 Misc.2d at 2, 597 N.Y.S.2d at 258.

Despite plaintiff's assertions to the contrary, the facts of this case are unlike those of *People v. Delhall,* 131 A.D.2d 870, 870–71, 517 N.Y.S.2d 228, 229–30 (2d Dep't 1987), in which the appellate division held that there had been no probable cause to arrest defendant for disorderly conduct, because the record did not establish that defendant's conduct—conversing with four other individuals on a sidewalk—had obstructed pedestrian traffic, constituted a refusal to comply with police orders to "move on" or risked breaching the peace. *Id.* Here, Deputy Campus had probable cause to arrest plaintiff for disorderly conduct. Plaintiff admits to having contributed to the "beehive activity" surrounding the accident, by standing in the middle of the road, near a crash site, and ignoring at least one order to "step back."

■ Alternatively, Deputy Campus's belief that he had probable cause to make the arrest was not unreasonable. While plaintiff may not have intended to cause inconvenience, annoyance or alarm, it was not unreasonable for defendant to have concluded that plaintiff's conduct recklessly risked interfering with the rescue attempt, and thereby threatened the public order. The test here is not whether defendant's conduct was reasonable but whether it "was clearly unreasonable" under the circumstances. *See Lowth v. Town of Cheektowaga,* 82 F.3d 563, 572 (2d Cir.1996).[4]

---

4. It should be noted that on the undisputed facts of this case, it is irrelevant whether Deputy Campus had personal knowledge of plaintiff's encounter with Wawrzonek. *Cf.* Pl.'s Rule 3(g) Statement ¶¶ 6–7; Def.'s Rule 3(g) Statement ¶ 7. His decision to arrest plaintiff was reasonable under the circumstances, regardless of what he

may, or may not, have seen or heard regarding this encounter. Eyewitness statements may provide reasonable grounds for arrest, *see, e.g., Singer,* 63 F.3d at 119; *Bernard,* 25 F.3d at 102, but are by no means the only basis for probable cause. This is not a case where plaintiff has alleged that the police have disregarded exculpa-

■ Given the above circumstances, this Court holds as a matter of law that defendant had probable cause to arrest plaintiff for disorderly conduct and obstructing governmental administration. Alternatively, we hold that Deputy Campus is immune from suit by plaintiff for false arrest and false imprisonment, because it was reasonable for him to believe that he had probable cause.[5]

## C. Malicious Prosecution

■ We also hold, as a matter of law, that Deputy Campus is immune from suit for malicious prosecution, because plaintiff has failed to submit sufficient evidence to prove this claim. In considering a claim for malicious prosecution, we must first look to the elements of common law tort. See Singer, 63 F.3d at 116. To state a claim for malicious prosecution under New York law, plaintiff must prove (1) the initiation of a criminal proceeding against plaintiff; (2) the termination of the proceeding in plaintiff's favor; (3) lack of probable cause to commence the proceeding; and (4) actual malice as motivation for the proceeding. Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir.1997); Russell v. Smith, 68 F.3d 33, 36 (2d Cir.1995); Broughton v. State, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95, 335 N.E.2d at 315. Additionally, the alleged violation must have been effectuated "pursuant to legal process." Singer, 63 F.3d at 116–17 (quoting Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994)). Ordinarily, "legal process" takes the form of an arrest warrant or arraignment. Id. at 117. A warrantless arrest made prior to an arraignment does not constitute "legal process." Id. In this case, process was not effected until plaintiff was arraigned. See Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir.1994). Accordingly, the facts surrounding plaintiff's allegedly unlawful arrest are irrelevant to the malicious prosecution claim. Accord Dzinanka v. County of Suffolk, 932 F.Supp. 59, 62 (E.D.N.Y.1996).

■ It is undisputed that plaintiff was prosecuted, tried and acquitted for obstructing governmental administration and disorderly conduct. As previously stated, Deputy Campus had probable cause for arresting plaintiff on both counts, and, even if he did not have probable cause to arrest plaintiff, Deputy Campus is protected by the qualified immunity defense. See supra Part I.B. As with probable cause to arrest, probable cause to prosecute under New York law is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir.1994). If there existed probable cause to arrest, probable cause upon arraignment is presumed absent a showing that intervening facts have dissipated probable cause. See Lowth, 82 F.3d at 571. The evidence submitted offers no evidence of any intervening fact that controverts probable cause. Therefore, we must presume that there remained probable cause when plaintiff was arraigned. Because plaintiff has failed to show the absence of probable cause, he has failed to sustain a claim for malicious prosecution.[6]

---

tory eye-witness statements. Cf. Marshall, 105 F.3d at 55 (probable cause to arrest may have been "negated" where eye-witness denied criminal activity by defendant); Bove v. Kennedy, 899 F.Supp. 114, 118 (E.D.N.Y.1995) (allegation of perjury by arresting officer insufficient to defeat summary judgment; court should examine "remaining undisputed facts to determine whether they contain sufficient indicia of probable cause") (citation omitted). Plaintiff was arrested, because Deputy Campus had determined that plaintiff was either obstructing, or could potentially obstruct, a rescue attempt, after Campus had observed plaintiff remaining near a crash site, disobeying his orders.

**5.** Plaintiff's claim for false imprisonment can only be established if there was no probable cause to support plaintiff's arrest and detention. Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986). Because we find that Deputy Campus had probable cause to arrest plaintiff, or alternatively, that Campus is protected by the doctrine of qualified immunity, plaintiff's false imprisonment claim must fail. Accord Bryant v. Rudman, 933 F.Supp. 270, 276 n. 3 (S.D.N.Y.1996).

**6.** Because we find that there existed probable cause at the time of the arraignment, we need not address whether plaintiff's post-arraignment court appearance or appearance to be fingerprinted and photographed constitute a "seizure" sufficient to implicate the Fourth Amendment. See Singer, 63 F.3d at 117; Bryant, 933 F.Supp. at 274 n. 2.

Because there existed probable cause for defendant to arrest plaintiff, or alternatively, because defendant is shielded by qualified immunity, we grant summary judgment for defendant on the issue of individual liability.

## III. Action Against Deputy Campus in His Official Capacity

 Neither has plaintiff adduced a claim against Deputy Campus in his official capacity. In general, a claim against a defendant in his official capacity is just "another way of pleading an action against [the] entity of which the officer is an agent." *Graham*, 473 U.S. at 165, 105 S.Ct. at 3105. *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"); *Karcher v. May*, 484 U.S. 72, 78, 108 S.Ct. 388, 393, 98 L.Ed.2d 327 (1987) ("the real party in interest in an official capacity suit is the entity represented and not the individual office holder"). A plaintiff states a claim against a municipality under section 1983 only where the complaint alleges, at least circumstantially, some unconstitutional action resulting from a policy or custom of the municipality. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035–36 n. 55, 56 L.Ed.2d 611 (1978); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995). Thus, in order to maintain an action against a defendant in his official capacity, a plaintiff should allege facts sufficient to prove a "custom or policy" of the municipality. *See, e.g., McGriff v. N.Y.C. Commissioner*, 1997 WL 231181, No. 96 Civ. 116, at *1—*2 (S.D.N.Y. May 6, 1997) (dismissing complaint where plaintiff neglected to allege "municipal policy or practice" causing injury, thereby failing to state a claim against defendants in their official capacity); *Gaughan v. Nelson*, 1997 WL 80549, No. 94 Civ. 3859, at *3 (S.D.N.Y. Feb. 26, 1997) (same); *Gordon v.. Katz*, 934 F.Supp. 79, 84–85 (S.D.N.Y.1995) (dismissing action against defendants in their official capacities where "interpreting complaint in its broadest sense, [p]laintiffs ... failed to provide any evidence of a municipal custom [or] policy"), *aff'd*, 101

F.3d 1393 (2d Cir.1996). *See also Mathie v. Fries*, 121 F.3d 808, 817–18 (2d Cir.1997) (remanding where damages were awarded against sergeant both "individually and in his former official capacity," and plaintiff had not "purport[ed] to be making a claim against [county]").

Plaintiff has brought suit against defendant both "individually and as Deputy of the Dutchess County Sheriff's Department .... in his official capacity." Cplt. at 1. Nowhere, however, does plaintiff name Dutchess County as defendant nor plead any facts which even circumstantially suggest the county has a custom or policy which resulted in violation of plaintiff's rights. Because of this defect, plaintiff's claims against Deputy Campus in his official capacity must be dismissed. *Cf. Ortiz v. Court Officers of Westchester County*, 1996 WL 531877, at *4—*5 (S.D.N.Y. Sept.19, 1996) (declining summary judgment to defendants where plaintiff did not plead municipal policy or custom; plaintiff "never officially named the [individual] defendants," and thereby brought suit against the officers solely "for their personal actions and conduct").

## CONCLUSION

Because defendant Deputy Campus had probable cause to arrest plaintiff for obstructing governmental administration and disorderly conduct, or alternatively, because it was not unreasonable for him to believe that he had probable cause, we grant summary judgment to defendant on the issue of individual liability for false arrest, false imprisonment and malicious prosecution. Additionally, we grant summary judgment to defendant on the issue of official liability, because plaintiff has not stated a custom or policy of Dutchess County which resulted in violation of his rights. The complaint, therefore, is dismissed on claims one, two and three.

SO ORDERED.